UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH LEBEAU                                                         CIVIL ACTION

VERSUS                                                                     NO. 04-1980

HORIZON LINES, L.L.C.                                              SECTION "K" (4)

## ORDER AND REASONS

Before the Court is defendant's Motion for Summary Judgment (Rec. Doc. No. 19). Having reviewed the pleadings, memoranda, and relevant law, the Court **DENIES** defendant's motion for the following reasons.

**Background:**

Plaintiff Joseph LeBeau was employed as an able-bodied seaman aboard the M/V HORIZON CHALLENGER, a vessel owned and operated by defendant Horizon Lines, L.L.C.. On March 3, 2004, at approximately 2:30 p.m., plaintiff was injured while maneuvering "twist locks" on the deck of the vessel. The vessel typically carries containers; however on the day of plaintiff's accident the ship did not have any cargo, having just come out of routine maintenance and repairs. As a result, the deck of the ship contained only boxes, containers with turnbuckles, twist locks, and other cargo lashing gear used to secure containers when the ship had cargo. Plaintiff, under supervisory orders from the ship's bosun, began work at approximately 8 a.m.

Plaintiff and others worked from fore (hatch No. 1) to aft (hatch No.5), distributing twist locks on the ship's deck, crossing across the hatch covers as he moved along laying out gear. The ship has large "lift off" hatch covers with gaps in between of about 19 inches wide. In between the gaps, located about several feet below the gap openings are metal plates, which, according to defendants, are installed to prevent stowaways from hiding in the gaps between the hatch covers. At the moment of the injury plaintiff, empty-handed but with the sun in his eyes, was crossing over the gap between the No. 5 starboard hatch cover to the No. 5 center hatch cover when he missed his step and fell into the gap. As a result plaintiff lacerated his shin, bruised his knee and strained his back and was unable to work for several months.

Plaintiff claims that prior to his injuries, defendant Horizon Lines was on notice of the gaps in the decking and the manner in which such twist locks were distributed, but had done nothing to remedy the potential hazard. Plaintiff claims that defendant failed to provide him with a safe workplace with the proper equipment. He asserts Jones Act negligence claims, a general maritime claim for unseaworthiness, and a claim for maintenance and cure. Defendant moves for summary judgment as to all plaintiff's claims based on a lack of causation.

**Legal Standard and Analysis:**

Jones Act negligence and unseaworthiness are two separate and distinct claims. *Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1041 (*citing Usner v. Luckenback Overseas Corp.*, 400 U.S. 494 (1971); *Mitchell v. Trawler Racer*, 362 U.S. 539, 550 (1960)). The standard of care for a Jones Act seaman is to act as an ordinarily prudent seaman would act in like circumstances. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997). The standard of proof of causation in a Jones Act claim has been termed "featherweight." *Smith v.*

*Trans-world Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985).  As such, a Jones Act plaintiff may recover if the negligence of the defendant played any part, no matter how slight, in bringing about plaintiff's injury.  *Billiot v. La-Tex Gulf Drilling Corp.*, 1994 WL 716004, *1 (E.D.La. Dec. 22, 1994)(citing Schoenbaum *Admiralty and Maritime Law*, § 6-22 at 322 (2d ed. 1994)). "Evidence of the 'slightest' negligence is sufficient to sustain a finding of Jones Act liability." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1352 (5th Cir. 1988), *citing Theriot v. J.Ray McDermott & Co., Inc.*, 742 F.2d 877, 881 (5th Cir. 1984).

Pursuant to such a featherweight causation burden, plaintiff's Jones Act claim is sufficient to overcome summary judgment.  Plaintiff alleges that defendant was negligent in several ways that caused his injuries, and that defendant had notice of both the gaps and the methods by which the twist locks were laid out.  Pursuant to the deposition testimony submitted, it appears that plaintiff, as well as the bosun, the cadet, and the chief mate, rather than taking the alternative, longer route of using catwalks and ladders as a means to reach the hatches, instead regularly traversed the gaps themselves as a means to lay out the twist locks in the shortest amount of time.  For instance, when witness Roy Williams, the ship's bosun, was asked about the availability of alternative routes he stated that traversing the gaps was "about the best way [he saw] how to get the gear out, and trying to get it out in time," Williams Dep., p. 38, lines 5-25, but that "we could have went another way, probably took them to the catwalk, and then, walk them out that way."  Williams Dep., p. 39, lines 1-5.[1]   As to defendant's notice of the potentially

---

[1] These sentiments were echoed by the Chief Mate in his deposition where, when asked if there were other ways to get the twist locks out on deck other than going across the top of the hatch covers,  he stated, "Not that I know of," and that to use the catwalk, "would be extra walking . . . you have to walk to the one end of the hatch, go down the catwalk, and then walk—to me it would be more difficult.  And you'd be climbing back up on the hatch and putting the cones in it." Schaeffer Dep., page 13, lines 9-20.

unsafe condition, Williams also testified that crew members were told to be careful between the hatches because there had been at least one incident of someone falling into the gap prior to plaintiffs accident:

> Q: Okay. There had been another incident of somebody falling down the gap between the compartments, though?
> A: For my knowledge, yes.
> Q: Okay. And who was that; do you recall?
> A: That was another Seaman.
> Q: All right.
> A: I don't know his name. I forgot his name.
> Q: Okay. But it was prior to Mr. LeBeau's accident, correct?
> A: Right.
>
> Williams Dep., p. 29-30, lines 20-25, 1-6.

Under the Jones Act standard for causation the Court cannot find, as a matter of law, that defendant's asserted negligent actions with regards to the manner in which plaintiff was directed to place the twist locks on deck and the use of the seemingly customary practice of crossing over several 19 inch gaps in the middle of the ship's deck while doing so played no role in bringing about plaintiff's injury. Accordingly the Court must deny defendant's motion for summary judgment as to plaintiff's Jones Act claim.

As to plaintiff's claims of unseaworthiness, the Court finds hereto that defendant's motion must be denied. Unlike a Jones Act claim, unseaworthiness is "predicated without regard to fault or the use of due care." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991)(*citing Lee v. Pacific Far East Line, Inc.*, 566 F.2d 65, 67 (9th Cir. 1977)). A shipowner has an absolute nondelegable duty to provide a seaworthy vessel, *id.*, and "[t]he standard of causation for unseaworthiness is a more demanding one and requires proof of proximate cause." *Id.* (*citing Chisholm v. Sabine Towing and Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982)). To establish

proximate (or legal) cause, plaintiff must prove more than "mere 'but for causation.'" *Billiot*, 1994 WL 716004 at *2. Rather a plaintiff must prove that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury" complained of, and "that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Brister*, 946 F.2d at 356 (*citing Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)(citations omitted)). "The injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used," *Boudreaux v. United States,* 280 F.3d 461, 468 (5th Cir. 2002) *(citing Jackson v. OMI Corp.*, 245 F.3d, 525, 527 (5th Cir. 2001)), and "must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.*

Defendant asserts that plaintiff's explanations for the cause of the accident, namely that the sun was in his eyes, his mind was elsewhere, and/or he was tired, are essentially superseding causes of plaintiff's injuries such that plaintiff's unseaworthiness claim is not actionable. Defendant further argues that the mere presence of a potential tripping hazard does not render a vessel unseaworthy. However, based on the facts presented, the Court cannot find that plaintiff's negligence, as a matter of law, superseded defendant's negligence. *See Billiot*, 1994 WL 71600 at *2. As stated by the Fifth Circuit, the burden of proof of causation for a general maritime claim of unseaworthiness requires *more* than just a showing of intervening negligence of a third party:

> The fact that an intervening act of a third person is negligent in itself or done in a negligent manner *does not* make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about if, (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person had so acted, or (c) the intervening act is a normal consequence of a situation created by the

> actor's conduct and the manner in which it is done is not extraordinarily negligent. *Donaghey v. Ocean Drilling and Exploration Co.*, 974 F.2d 646, 652 (5th Cir. 1992)(*quoting Nunley v. M/V Dauntless Colocotronis*, 727 F.2d 455, 464-65 (5th Cir.)*, cert denied*, 469 U.S. 832, 105 S.Ct. 120 (1984)).

Based on the above, the Court finds that a jury could reasonably find that plaintiff's crossing over of the gaps was a normal consequence of defendant's asking of the deck crew to lay out the twist locks in the most timely and efficient manner. Additionally, based on the evidence submitted, apparently the customary practice in order to lay out the locks was to go over the gaps rather than around on the catwalk and at least one accident involving the gaps had already occurred prior to plaintiff's accident. As to defendant's superseding cause arguments, given the submitted evidence that supervisory personnel also traversed the hatch covers via the "shortcut" of crossing over the open gaps numerous times *without* incident, the Court cannot find plaintiff's particular conduct on the date in question so extraordinarily negligent as to completely absolve defendant on a motion for summary judgment. Whether defendant's failure to cover the gaps created an unseaworthy vessel must be left for trial. Additionally, while the hatch cover and gap arrangement may have been "reasonably fit" for the intended purposes of covering what was below deck, preventing stowaways, and providing storage on deck, whether such gaps were reasonably fit for the purpose of going from one side of the ship to another also must remain for trial. Finally, there remains a material issue of fact as to whether the vessel should have been equipped with some sort of device to cover these gaps in order to prevent injury. Consequently, defendant's motion for summary judgment as to plaintiff's unseaworthiness claim must also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment (Rec. Doc. No. 19) is **DENIED**.

Signed this  2nd  day of May, 2006, in New Orleans, Louisiana.

                                **STANWOOD R. DUVAL, JR.**
                        **UNITED STATES DISTRICT COURT JUDGE**